## GROENING *v.* OPSATA.

1. FRAUD—PRESUMPTIONS—INFERENCES.
    Fraud may not be presumed nor may it be lightly inferred.

2. SAME—BURDEN OF PROOF—EVIDENCE.
    The burden rests upon those relying on fraud as the basis for the recovery of damages to establish it by clear and satisfactory proofs.

3. TRIAL—MOTION FOR DIRECTED VERDICT—EVIDENCE.
    In passing on a defendant's motion for a directed verdict, it is the duty of the trial court to construe the testimony as strongly as possible in favor of the plaintiff.

4. FRAUD—EROSION OF BLUFF—EVIDENCE.
    In action for damages arising by reason of defendants' alleged false and fraudulent misrepresentations as to danger of ero-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 24 Am. Jur., Fraud and Deceit, § 256.
[3] 53 Am. Jur., Trial, § 349.
[5] 23 Am. Jur., Fraud and Deceit, § 144.
[6] 23 Am. Jur., Fraud and Deceit, § 141 *et seq.*
[7] 23 Am. Jur., Fraud and Deceit, § 78.
[8] 23 Am. Jur., Fraud and Deceit, § 3.
[10] 8 Am. Jur., Brokers, § 64.
[13] 27·Am. Jur., Husband and Wife, § 477.
[14] 53 Am. Jur., Trial, § 579.

sion of bluff at lake shore, statements of fact by defendants concerning which plaintiffs were inquiring—that the bluff was breaking off—were such as to induce in latter a belief that there was in fact no danger to the property plaintiffs were purchasing from defendants, were sufficient to justify submission of issue of fraud to jury and to support its verdict for plaintiffs.

5. SAME—RELIANCE ON VENDOR'S FALSE REPRESENTATIONS—EVIDENCE.

In purchasers' action against vendors for damages arising from false representations made as to danger of erosion of bluff at shore of a Great Lake, evidence established that plaintiffs did rely upon statements made by defendants notwithstanding they did have a view of the premises in the winter and might have inquired of others as to action of the elements on the bluff.

6. SAME—CONCEALMENT.

Where plaintiff purchasers advised defendant vendors that reliance was being placed on latter's superior knowledge, experience as a builder and information as to danger of erosion of bluff upon which a house had been built at shore of a Great Lake, and defendants concealed the true facts and deliberately created false impressions and inferences, defendants were thereby guilty of an express and intentional misrepresentation.

7. SAME—CONCEALMENT—MATERIAL FACTS.

The concealment of material facts that one, under the circumstances, is bound to disclose may constitute actionable fraud.

8. SAME—DEFINITION OF REPRESENTATION.

A representation, within the meaning of the law of fraud, is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action.

9. SAME—INSTRUCTIONS—CONCEALMENT.

Statements relative to concealment of facts by one charged with duty to make disclosure, made by trial judge in his charge to jury in action by purchasers of lake shore property against vendors for fraud in misrepresentations as to danger of erosion of bluff upon which house was built, held, to have properly submitted to jury issue of fraud presented by pleadings and proof in the case.

10. BROKERS—AGENT OF VENDOR OF REAL ESTATE.

Under evidence presented in purchasers' action against broker and vendors for fraud, the real estate broker was properly found to have been an agent of the vendors.

11. EVIDENCE—REAL ESTATE BROKER AS AGENT—FRAUD—NONSUIT.

Where purchasers sued both the real estate broker and the vendors for fraud incident to the purchase of land and testimony of the broker was received as to statements made by him to plaintiffs was offered and received without objection, failure to strike such testimony at time plaintiffs submitted to a voluntary nonsuit as to him was not error where testimony was held competent when received, no formal motion to strike the testimony was made and the broker was defendants' agent.

12. VENDOR AND PURCHASER—FRAUD—PLEADING—BROKERS.

Where declaration in purchasers' action against both the real estate broker and the vendors for fraud averred the offer to sell was made by the latter as owners and the other defendant as broker and subsequently charged the making of false and fraudulent representations by the defendants, it sufficiently apprised defendants of the nature of the cause of action plaintiff was asserting and, where no objection was made in the trial court as to the sufficiency and case was tried on the theory the broker represented the vendors, claim on appeal that declaration was insufficient did not show prejudice.

13. SAME—FRAUD—HUSBAND AND WIFE—REQUEST TO CHARGE.

Where defendant vendors were husband and wife, owned the property together, each participated in efforts to bring about the sale to plaintiff purchasers, both were present when the principal conversation between the parties occurred and each apparently acquiesced in the statements made by the other, vendors' request to charge that the husband could not be held liable for misrepresentations made by wife and conversely was properly refused.

14. SAME—FRAUD—REQUESTS TO CHARGE—EVIDENCE.

In purchasers' action against vendors for fraud incident to sale of property located on a bluff at a lake shore, it was not error to deny defendants' requests to charge that the parties were dealing at arm's length and that defendants owed no duty to call plaintiffs' attention to facts readily observable where such requests assumed facts not established by proofs.

Appeal from Berrien; Westin (Edward A.), J. Submitted October 8, 1948. (Docket No. 73, Calendar No. 44,180.) Decided November 12, 1948.

Case by Otto F. Groening and wife against Theodore Opsata and wife for damages caused by false and fraudulent misrepresentations. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed.

*Robert P. Small,* for plaintiffs.

*Killian & Banyon* (*Kelley & Seelye,* of counsel), for defendants.

Carr, J. In March, 1945, the defendants Theodore Opsata and Jennie M. Opsata, husband and wife, conveyed to plaintiffs a parcel of land in Berrien county on the shore of Lake Michigan. Located on the property was a residence which defendants had built on a bluff overlooking the lake. The total consideration paid by plaintiffs was the sum of $11,000. Following the transaction the bluff, as a result of the action of the elements and of the waves from the lake, was completely eroded—finally disappearing entirely during the year 1946. Plaintiffs sued for damages, claiming that they had purchased the property in reliance on false and fraudulent representations made by defendants and by the real estate broker who had brought about the deal.

At the conclusion of their proofs plaintiffs submitted to a voluntary nonsuit as to the real estate broker. Motion for a directed verdict in favor of the other defendants was taken under advisement by the trial court. This motion was renewed at the conclusion of the testimony and was again taken under advisement. The jury returned a verdict for the plaintiffs in the full amount of the damages claimed by

them, and defendants' motion for judgment notwithstanding the verdict, or in the alternative for a new trial, was denied.   Defendants have appealed.

The alleged misrepresentations of which plaintiffs complained on the trial had reference to the condition of the bluff on which the house was built.   It was testified, in substance, in support of the averments of the declaration, that defendants during the negotiations for the purchase represented to plaintiffs that the bluff was in sound condition and in no danger from erosion.   On behalf of defendants it is insisted that whatever statements were made by them, or by the real estate broker, amounted to no more than expressions of opinion and could not under the circumstances be regarded as misrepresentations of fact.   It is claimed in consequence that the trial court was in error in not directing a verdict in favor of the defendants.

Fraud may not be presumed nor may it be lightly inferred.   The burden rests on those relying thereon as the basis for the recovery of damages to establish it by clear and satisfactory proofs.   *Baker* v. *Frischkorn,* 271 Mich. 485; *Kirby* v. *Gibson Refrigerator Co.,* 274 Mich. 395 (103 A. L. R. 1343); *Grigg* v. *Hanna,* 283 Mich. 443; *Waldbauer* v. *Hoosier Casualty Co.,* 285 Mich. 405.   Whether plaintiffs in the instant case sustained the burden of proof resting on them must be determined from an examination of the testimony.   It appears that plaintiffs were desirous of purchasing a home, and with that thought in mind contacted the real estate broker, who showed them defendants' property.   There was at the time ice and snow on the ground.   According to plaintiffs' testimony the defendant Mrs. Opsata was asked if the house was not too close to the edge of the bluff and in a dangerous position in consequence.   To such question it is claimed Mrs. Opsata replied:

"No, that isn't too close here because we have lived here for so many years and nothing to fear and everything is all right. You don't have to have no fear on this and it is perfectly safe here. We are living here."

Following their first inspection of the property, plaintiffs returned to the broker's office and signed an offer to purchase the property for $11,000, of which amount $200 was paid at the time. The offer was subsequently accepted by defendants. Shortly thereafter plaintiffs interviewed both defendants, Mr. Groening telling them that he had been warned that the bluff was breaking off and that the whole property would be down in the lake eventually. Plaintiffs claim that they asked defendants as to the situation, informing them in substance that they were relying on the experience of Mr. Opsata in building houses on the lake shore. They further claimed in their testimony that Mr. Opsata answered that he had built many houses, that he was familiar with the conditions of the bluff and that "this is the spot I have selected and I don't see why there should be any fear. I don't see why anybody could say anything like that." It was also claimed that Mr. Opsata further stated to plaintiffs:

"There are no break-offs and also this bluff is perfectly safe; there is nothing wrong with it; we have lived here for many years and nothing I can see—nothing to fear, that is absolutely safe here."

Plaintiffs claimed that following such statements they interviewed the real estate broker, who undertook to reassure them by telling them there was nothing wrong, that Mr. Opsata knew that the bluff was perfectly safe, and that plaintiffs had no reason to fear anything. Plaintiffs' version of the conversations was disputed by defendants, but it is apparent that the jury determined the disputed issue in

favor of plaintiffs' claims. Shortly after the con-
versations above referred to the deal was closed, and
the full consideration for the transfer was paid by
plaintiffs to defendants.

In passing on the motion for a directed verdict it
was the duty of the trial court to construe the testi-
mony as strongly as possible in favor of the plain-
tiffs. Such being the situation the failure to grant
the motion was not error. The statements made by
defendants and by the real estate broker, to which
plaintiffs testified, may not properly be construed as
mere expressions of opinion. They were, rather,
statements as to the facts concerning which the
plaintiffs were inquiring. The record indicates
quite clearly that defendants were fully informed as
to the existing condition, that the process of erosion
along the shore in question began in 1943, and that
people having their homes along the shore were dis-
turbed because of the changes that were taking place.
In 1944, some attempt was made to procure assist-
ance from authorities at Washington in order to pre-
vent, if possible, further damage to property from
erosion caused by waves from the lake. Mr. Opsata
admitted that in that year he had signed with others
a letter addressed to the president. To such request
a reply was received from the chief of engineers of
the civil works division of the war department ad-
vising, in substance, that the government could not
render assistance because the public right of navi-
gation was not imperiled.

Without discussing the proofs at greater length,
it must be said that the record fully justifies the in-
ference that defendants, knowing the actual situa-
tion that existed with reference to the property,
answered plaintiffs' inquiries as to the facts in such
manner as to reasonably induce the latter to believe
that there was in fact no danger to the property that
they were purchasing. Defendants' claim that the

proofs with reference to fraud were insufficient to justify submitting the case to the jury and to support the verdict rendered is not tenable. *Crook* v. *Ford,* 249 Mich. 500; *Curby* v. *Mastenbrook,* 288 Mich. 676.

Defendants further contended that plaintiffs failed to prove with the requisite degree of certainty that they relied on the representations made as to the safety of the property. However, plaintiffs testified specifically that they did so rely, and their action in disregarding the warning that had been given to them and closing the deal after they had talked the matter over with defendants and the real estate broker, corroborates such testimony. Mr. Groening also testified that he specifically informed Mr. Opsata that he was relying on the latter's word. Having answered the questions of the plaintiffs in such manner as to naturally induce reliance thereon, defendants are scarcely in position on this record to claim that plaintiffs relied on their own observations and on the statements of others in going through with the transaction. The fact that plaintiffs might have made a more minute investigation and might have obtained information and advice from other, and presumably well informed, sources does not bar them from seeking relief in this action. Nor did the fact that they had looked over the property under the circumstances indicated by the record preclude them from relying on defendants' representations as to the facts. *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406); *Yanelli* v. *Littlejohn,* 172 Mich. 91; *Steele* v. *Banninga,* 225 Mich. 547; *Hubert* v. *Joslin,* 285 Mich. 337.

In submitting the case to the jury, the trial judge charged as follows:

"Fraud may be consummated by suppression of a material fact by either party to a contract of sale

which he is in good faith bound to disclose, as well as by open, false assertions, since by such suppression there is fraudulently produced a false impression upon the mind of the other party.

"And, whether a duty to speak exists is determinable by reference to all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties. The facts concealed must be such as, in fair dealing, the one party has a right to expect to be disclosed, and such as the other party is bound to disclose.

"In this case the plaintiffs claim that false and fraudulent representations were expressly made to them by the defendants and their agent Rutz. Defendants deny that they made any misrepresentations whatsoever. It will be for you, members of the jury, to determine from all the evidence in the case, first, whether oral representations were made, and secondly, if not, then whether under the circumstances of this case their silence amounted to a representation."

Defendants assert that the paragraphs from the charge were erroneous because the declaration did not in specific terms refer to fraudulent concealment. It did allege that the defendants "at the time of said offer and during negotiations falsely and fraudulently represented to plaintiffs that the bluff on said property, upon which bluff was builded a house, was sound and safe throughout." The manner in which the representations were made was not specifically stated. The case seems to have been tried on behalf of plaintiffs on the theory that the false and fraudulent representations referred to in the declaration were made in the replies of defendants to plaintiffs' questions concerning the property, that such answers were in fact untrue to the knowledge of the defendants, and that the failure to reply to plaintiffs in such manner as to state the actual facts was in the nature of a concealment equivalent to express mis-

representations. The excerpt from the charge, of which defendants complain, should be read in conjunction with the paragraph immediately preceding, which is as follows:

"Now, representations may be made orally, as plaintiffs claim in this suit, by writing, or by acts and conduct and arts and artifices calculated to deceive. While false representations generally consist of verbal or written statements, a misrepresentation in words is not essential. Stated in another way, a misrepresentation need not be express, but may be inferred from circumstances which are in fact equivalent to positive representation."

Plaintiffs do not claim that a fiduciary relationship existed between themselves and defendants. However, the latter were advised that plaintiffs were relying on the superior knowledge, experience as a builder, and information of Mr. Opsata. Conceivably the defendants might have taken the position, when the questions were asked them by plaintiffs, that they did not care to make any statements whatsoever concerning the property. However they did not follow such course. On the contrary, they made replies to plaintiffs' specific inquiries, which replies did not bring forth the facts that plaintiffs were seeking to learn, but were in such form as naturally tended to reassure plaintiffs and to cause them to proceed on the assumption that the property was not in any danger from erosion. Under such circumstances the concealment of the true facts and the deliberate creating of false impressions and inferences is the equivalent of an express and intentional misrepresentation.

A situation analogous to that in the case at bar was involved in *Kenyon* v. *Woodruff,* 33 Mich. 310. There plaintiff sued for damages claimed to have been sustained by him as the result of his reliance

on false and fraudulent representations made by defendants. The declaration, as in the case at bar, charged the making of the representations but did not specifically claim that defendant was guilty of concealment. The trial court in his charge referred to the concealment of facts that should be disclosed as fraudulent. In holding that the charge was not erroneous, this Court said in part:

"An inspection of the record discloses that the fraudulent representations relied on, and which were set forth in a pretty general way in the declaration, consisted in stating what was particularly and directly untrue, and also in stating but part of the truth in respect to other matters.

"And the court in charging the jury referred to designed partial statements, and their intended tendency and influence, and in so doing spoke of concealment of facts which made those declared partial and fraudulent.

"After a careful perusal of the evidence and the charge as a whole, we think the plaintiffs in error have no reasonable ground of complaint against the instructions to the jury, unless there was error in allowing the judgment against Woodruff, with the interest upon it, to be taken as a measure of recovery; and this is the substantial question in the case."

That concealment of material facts that one under the circumstances is bound to disclose may constitute actionable fraud is not open to question. *Busch v. Wilcox,* 82 Mich. 315; *Prudential Insurance Company of America* v. *Ashe,* 266 Mich. 667; *Wolfe* v. *A. E. Kusterer & Co.,* 269 Mich. 424. In 23 Am. Jur. p. 755, it is said:

"A representation within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the

mind a distinct impression of fact conducive to action."

Of like import, the following statement is made in 37 C. J. S. p. 245:

"The concealment of a fact which one is bound to disclose is an indirect representation that such fact does not exist, and constitutes fraud."

In replying to plaintiffs' inquiries concerning the property it was the duty of defendants to state the facts called for in accordance with their knowledge of the situation. Their replies were well calculated to create the impression that they were doing so. Actually, however, they were, as the jury found, guilty of misrepresentation. Such misrepresentation lay in the positive misstatements made and in the failure to give the true facts while ostensibly doing so. The charge of the trial court must be construed in its entirety and in the light of the situation presented on the record. So read it cannot be said that the statements of which defendants complain did not properly submit to the jury the issue presented by the pleadings and the proofs in this case.

As before noted, the real estate broker, whose efforts brought the parties together and resulted in the sale, was joined as a party defendant. Testimony as to statements made by him to plaintiffs was offered and received. No objection thereto was made at the time on behalf of Mr. and Mrs. Opsata. When plaintiffs submitted to a voluntary nonsuit as against the broker the record indicates that there was some discussion between counsel and the court as to whether said testimony was admissible as against the other defendants. The judge indicated that he thought it competent, and the case then proceeded. It does not appear that any formal motion to strike the testimony was made. Defendants now claim that the court was in error in not

striking it out, and also in error in making reference in his charge to the jury to plaintiffs' claim that false and fraudulent representations had been made to them "by defendants and their agent." That the broker was the agent of the defendants is scarcely open to question. Mr. Opsata testified that the broker had permission to sell the property, and also that a commission of 5 per cent. had been paid by defendants to the broker following the completion of the sale. The written offer of sale submitted by plaintiffs to defendants referred to the tender of the down payment of $200 to the broker as agent. The proofs clearly established the existence of the agency.

Defendants suggest, however, that the declaration did not sufficiently advise them that they were charged with statements made by any person other than themselves. However, it was averred in paragraph 3 of the declaration that the offer to sell was made by Mr. and Mrs. Opsata as owners and by the other defendant as a real estate broker, and the following paragraph charged the making of false and fraudulent representations by the defendants. While worded in rather general language, we think the averments of the declaration were sufficient to fairly and reasonably apprise the defendants of the the nature of the cause of action that plaintiffs were asserting against them. No objection was made in the trial court to the sufficiency of the declaration, and the case was tried on the theory that the broker represented the defendants in dealings with the plaintiffs. That a principal may be held liable for misrepresentations made by his agent in the sale of property, even though not expressly authorized to make representations concerning it, has been repeatedly held by this Court. *Moynes* v. *Applebaum,* 218 Mich. 198; *Plate* v. *Detroit Fidelity & Surety Co.,* 229 Mich. 482; *Lane* v. *Wood,* 259 Mich. 266.

Had defendants, by timely motion, raised a question in the trial court that the declaration was not sufficiently specific, amendments thereto might, and probably would, have been made. This was not done and defendants are scarcely in position now to say that they were prejudiced. The record clearly indicates that the case was tried and submitted to the jury on the meritorious issues involved.

Defendants requested the trial court to charge the jury that Mr. Opsata could not be held liable because of misrepresentations made by his wife, and conversely. The request was refused, and properly so. Mr. and Mrs. Opsata owned the property together, and it appears that each participated in the efforts to bring about a sale to plaintiffs. Moreover, both were present when the principal conversation between the parties occurred. Each apparently acquiesced in the statements made by the other.

Defendants' further request that the jury be charged to the effect that plaintiffs and defendants were dealing at arm's length, and that defendants owed no duty to call plaintiffs' attention to facts with respect to the property and the bluff thereon which were readily apparent and open to the plaintiffs' observation, was also properly refused. It assumed facts not established by the proofs. Plaintiffs' cause of action was not predicated on the failure of defendants to advise plaintiffs as to facts other than those sought to be elicited by the specific questions asked by plaintiffs, to which reference has been above made. The evidence introduced related to alleged misrepresentations made by defendants in their express statements, and their failure to state

the true facts in accordance with the duty resting on them in replying to plaintiffs' inquiries.

Judgment is affirmed, with costs to plaintiffs.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.