LUMBER VILLAGE, INC v SIEGLER

Docket No. 67887. Submitted May 3, 1984, at Grand Rapids.—Decided
    June 28, 1984.

Thomas S. Siegler and his wife, Priscilla, undertook in 1977 to
have a pole barn built for them for use in their horse stable
operation. They employed Larry M. Beaman and L. M. Beaman
Construction Company as the builder. Financing for the con-
struction was by means of a $68,000 mortgage with the Byron
Center State Bank. Lumber Village, Inc., supplied materials for
the barn, with a bulk of the materials being supplied in
September and October of 1977 and with smaller deliveries
being made as late as January, 1978. In September, 1977, the
Byron Center State Bank issued two bank money orders total-
ing $35,250 payable jointly to L. M. Beaman and Lumber
Village, Inc. The intent of the joint payee arrangement was in
the hope of avoiding the possibility of the imposition of a
mechanics lien by Lumber Village. The money orders were
picked up from the bank by Mr. Siegler and delivered to
Beaman. Without authorization from Lumber Village, Beaman
endorsed the name of Lumber Village on both money orders
and deposited the sums paid pursuant to the money orders in
his account in a Lansing bank. In late September and early
October of 1977, Byron Center State Bank paid each money
order as it was forwarded from the Lansing bank. When
Lumber Village did not receive payment from Beaman, it, in
April, 1978, recorded a mechanics lien on the Siegler property.
It was the receipt of a notice of the mechanics lien which
caused Mr. Siegler to become aware that Lumber Village had

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 574.
    16 Am Jur 2d, Constitutional Law § 176.
[2] 51 Am Jur 2d, Limitation of Actions §§ 107, 146 et seq.
[3] 51 Am Jur 2d, Limitation of Actions § 149.
[4] 10 Am Jur 2d, Banks § 545.
[5] 28 Am Jur 2d, Estoppel and Waiver § 1.
[6, 7] 51 Am Jur 2d, Limitation of Actions §§ 438, 444, 450, 452.
[7, 8] 51 Am Jur 2d, Limitation of Actions § 440.
[8] 37 Am Jur 2d, Fraud and Deceit §§ 145, 146.

not been paid. Mr. Siegler notified Byron Center State Bank, and shortly thereafter either the bank or Siegler became aware that the money orders had been paid over forged endorsements. In March, 1979, Lumber Village commenced in Kent Circuit Court a contract action against Beaman Construction and Beaman and his wife individually and sought to foreclose its mechanics lien on the Siegler property. A default judgment was entered against Beaman in May, 1980. In February, 1981, the Sieglers were permitted to file a third-party complaint against the Byron Center State Bank. With the filing of the Siegler third-party complaint in March, 1981, Lumber Village learned for the first time that it had been named as a payee on the money orders and that its name had been forged by Beaman. In April, 1981, the Sieglers filed for bankruptcy. In August, 1981, Lumber Village moved for leave to file a third-party complaint against Byron Center State Bank and in December, 1981, filed a complaint against the bank, alleging conversion arising out of the bank's payment of the money orders over forged endorsements. Byron Center State Bank moved for accelerated judgment on the basis of the three-year statute of limitations for actions on forged instruments. Lumber Village argued that the limitation period should start running upon its discovery of the existence of the forged endorsement, that the limitation period should be tolled because the bank had fraudulently concealed the existence of the cause of action, that the bank should be estopped from asserting the defense of the statute of limitations, and that it had pled a separate and independent cause of action for fraud arising out of the bank's failure to inform it of the forged endorsement. Stuart Hoffius, J., granted the bank's motion for accelerated judgment. From that order, Lumber Village appealed. *Held:*

1. The due process clauses in the state and federal constitutions do not mandate that the statutory limitation period commence to run upon discovery of the existence of a cause of action rather than at the time the wrong occurred, even where, as here, the statutory period may have expired by the time of discovery.

2. Fraudulent concealment such as will toll the running of the statutory period arises only where there is an affirmative act or misrepresentation unless there is an affirmative duty to disclose arising out of a fiduciary relationship of the parties. Since there was no fiduciary relationship existing between Lumber Village and Byron Center State Bank, and since the mere fact that Lumber Village was named as a payee does not create a fiduciary relationship, there was no fraudulent con-

cealment within the meaning of the statute because there was no affirmative act or misrepresentation.

3. Since the bank had no obligation to disclose to the plaintiff the fact of the forged endorsements, the bank's mere silence is not sufficient to warrant the invoking of equitable estoppel so as to preclude the bank's pleading of the statute of limitations.

4. While fraud may be consummated by the suppression of facts and of the truth where there is a legal or equitable duty to disclose, since no such duty to disclose exists here, plaintiff has failed to plead a cause of action which is separate and apart from its untimely claim based on the forged instrument.

Affirmed.

1. APPEAL — CONSTITUTIONAL LAW — CONSTITUTIONAL CHALLENGES.

Constitutional challenges to a statute, generally, may not be raised for the first time on appeal.

2. CONSTITUTIONAL LAW — DUE PROCESS — LIMITATION OF ACTIONS.

The right to due process of law under either the federal or the Michigan constitution does not mandate that the statutory limitation period for the bringing of an action begin to run at the time that the person seeking to bring the action discovers that the action exists rather than at the time the wrong occurred even though, in some instances, the statutory period may have run prior to discovery that a cause of action exists.

3. LIMITATION OF ACTIONS — FRAUDULENT CONCEALMENT.

Fraudulent concealment such as will result in the tolling of the running of a statutory period of limitation arises only upon a showing of fraud which is manifested by an affirmative act or misrepresentation except where there is an affirmative duty to disclose by reason that the parties are in a fiduciary relationship (MCL 600.5855; MSA 27.5855).

4. BANKS AND BANKING — BANK MONEY ORDER — PAYEES — FIDUCIARY RELATIONSHIPS.

There exists no fiduciary relationship between a bank which issues a bank money order and a payee of the money order which is not the bank's customer.

5. ESTOPPEL — WORDS AND PHRASES.

Estoppel arises where: (1) a party, by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts.

6. Limitation of Actions — Estoppel.

Factors to be considered in determining whether a defendant should be estopped from raising the defense of the running of the statutory limitation period include concealment by the defendant of the cause of action, misrepresentation by the defendant as to the statutory period in which the action may be brought, inducement by the defendant not to bring the action, existence of a promise by the defendant to pay or settle the plaintiff's claim, special knowledge by the defendant and a fiduciary relationship.

7. Limitation of Actions — Estoppel.

Equitable estoppel may preclude a defendant from raising as a bar the running of the statutory limitation period; generally, to justify the application of estoppel, one must establish that there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely upon this representation or concealment; mere silence, in the absence of a duty or obligation to disclose, is not sufficient to invoke the doctrine of estoppel.

8. Fraud — Silence — Duty to Disclose.

Fraud may be consummated by the suppression of facts and of the truth where there is a legal or equitable duty to disclose; actionable fraud by silence requires the pleading and proof of a duty to disclose and that there was reliance by the party seeking to establish fraud on the silence of the other party.

*Carruthers & Halverson Associates* (by *James G. Halverson)*, for plaintiff.

*Freihofer, Oosterhouse & DeBoer, P.C.* (by *Robert A. Buchanan* and *Clifford H. Bloom)*, for Byron Center State Bank.

Before: Beasley, P.J., and Allen and M. B. Breighner,* JJ.

Allen, J. Plaintiff, Lumber Village, Inc., appeals as of right from a September 22, 1982, order of accelerated judgment in favor of third-party defendant, Byron Center State Bank, pursuant to GCR

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1963, 116.1(5). Issue III raised on appeal is of first impression in Michigan.

In 1977, Thomas S. Siegler and his wife, Priscilla, undertook to have built for them a pole barn building for use in their horse stable operation business. For this purpose they employed Larry M. Beaman and L. M. Beaman Construction Corporation as the builder and secured financing for construction of the barn by a mortgage for $68,000 from the Byron Center State Bank. Plaintiff furnished building materials for the barn project, the bulk being delivered between September 27, 1977, and October 26, 1977, with smaller deliveries as late as January, 1978. Two money order checks totaling $30,250 were issued by the Byron Center State Bank to L. M. Beaman and Lumber Village, Inc., in September, 1977. The purpose of making the money orders payable to both parties was to avoid creation of a mechanics lien in favor of plaintiff.

The first check for $15,250 was dated September 22, 1977, and was picked up by Mr. Siegler, who gave the check to Beaman. Unbeknownst to either the bank or the Sieglers, and without the authorization of plaintiff, Beaman endorsed the name of plaintiff and deposited the check in his account at the Bank of Lansing on September 26, 1977. The second check, dated September 30, 1977, and in the amount of $15,000, was similarly endorsed by Beaman and deposited in his account on October 3, 1977. The first check was paid by Byron Center State Bank on September 27, 1977, and the second check was paid by the bank on October 5, 1977.

Plaintiff did not receive payment from Beaman and, in April, 1978, recorded a mechanic's lien on the Siegler property. Mr. Siegler first became aware that the checks had not been properly

negotiated when he was served with notice of the lien on April 12, 1978. Mr. Siegler immediately notified the bank, and this appears to be the first time that the bank or Siegler became aware that the instruments had been paid over forged endorsements. In March, 1979, Lumber Village filed a contract action against Beaman and sought to foreclose the mechanic's lien on the Siegler property. After considerable difficulty, service was finally obtained on Beaman, and a default judgment against him was entered in May, 1980.

In February, 1981, an order was entered permitting the Sieglers to file a third-party complaint adding the Byron Center State Bank as an additional party-defendant. Though the bank and the Sieglers knew of the forgery and that Lumber Village was named as a payee on the money orders, this information had never been communicated to Lumber Village. The bank's failure to inform plaintiff of the forgery is the subject of the instant appeal. In March, 1981, the Sieglers filed a third-party complaint against the bank. This was the first time Lumber Village learned of the forgery. In April, 1981, the Sieglers filed bankruptcy, and the cause was removed to the United States Bankruptcy Court but was remanded July 28, 1981. In August, 1981, Lumber Village, Inc., moved for leave to file a third-party complaint against Byron Center State Bank, and, by stipulation and order, a third-party complaint against the bank was filed in December, 1981.

Third-party defendant bank pled the three-year statute of limitations for forged instruments, MCL 600.5805; MSA 27A.5805, as an affirmative defense and, on June 28, 1982, moved for accelerated judgment. In a written opinion dated September 22, 1982, the trial court made the following findings:

1. For purposes of the motion, it was conceded that Lumber Village, Inc., did not become aware of the checks or the forgery until after the Sieglers filed their cross-complaint against the bank around April of 1981.

2. Based on *Continental Casualty Co v Huron Valley National Bank,* 85 Mich App 319; 271 NW2d 218 (1978), the three year statute of limitations applies to the alleged conversion and such statute began to run in September-October 1977, when the checks were paid on a forged endorsement and not in March 1981 when the plaintiff discovered the conversion or forgery.

3. Estoppel from asserting the defense of the running of the statute of limitations is unavailable in Michigan.

4. Estoppel and/or fraudulent concealment sufficient to toll the running of the statute of limitations requires active misconduct or affirmative acts or misrepresentations and mere silence is inadequate.

5. A separate or independent cause of action for silent fraud or fraudulent concealment requires detrimental reliance and, since Lumber Village, Inc., was unaware of the instruments, it could not have relied thereon to its detriment in any way.

The parties frame the issues differently both in content and number. As is our practice in such instances, we have rearranged and reworded the issues as follows:

I. Whether constitutional due process requires that a statutory period of limitations begin to run on the date a cause of action is discovered rather than the date the wrong occurred.

II. Whether defendant fraudulently concealed the existence of a cause of action so as to prevent

the statute of limitations from running until two years after discovering the action.

III. Whether defendant should be estopped from asserting the statute of limitations as a defense to plaintiff's cause of action.

IV. Whether plaintiff sufficiently stated a cause of action for silent fraud to allow the case to go to the trier of fact on the merits.

I

Initially, plaintiff presents the constitutional argument that due process requires that the statutory period of limitation starts running from the day of discovery by plaintiff of the cause of action, rather than from the date that the cause of action accrued. To hold otherwise, argues plaintiff, would result in the extinguishing of a payee's right to bring suit before the payee discovered that a cause of action existed. The trial court's opinion did not address the constitutional challenge, and nothing in the file suggests that the constitutional issue was raised at the trial level. The general rule of law is that constitutional challenges to a statute may not be raised for the first time on appeal. *Brookdale Cemetery Ass'n v Lewis,* 342 Mich 14, 18; 69 NW2d 176 (1955); *Petterman v Havermill Farms, Inc,* 125 Mich App 30, 33; 335 NW2d 710 (1983); *Michigan Carousel, Inc v Cecil,* 66 Mich App 248, 251; 238 NW2d 825 (1975).

Moreover, federal decisions find no violation of due process under the federal constitution even if the statute in question extinguishes a cause of action before it is discovered to exist. *Adair v Koppers Co, Inc,* 541 F Supp 1120, 1128 (ND Ohio, 1982) (Ohio's ten year statute of limitations for

actions against architects and engineers); *Jewson v Mayo Clinic,* 691 F2d 405, 411-412 (CA 8, 1982) (two-year limitation statute starts to run when treatment ceases rather than when injury is discovered); *Mathis v Eli Lilly & Co,* 719 F2d 134; 141 (CA 6, 1983); (Tenessee's ten-year limitation period for filing tort claim where injury was not discovered until 25 years after exposure); *Duke Power Co v Environmental Study Group, Inc,* 438 US 59; 82-93; 98 S Ct 2620; 57 L Ed 2d 595 (1978). (Price-Anderson Act limiting liability of operator of nuclear plant arising from nuclear accident).

Citing *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973), plaintiff argues that, if not under the federal constitution, at least under the Michigan constitution, a statute of limitations is unreasonable and therefore constitutionally flawed where it extinguishes a cause of action before the injured party knew or could have known of the cause of action.[1] However, this Court ruled in *Szlinis v Moulded Fiber Glass Cos, Inc,* 80 Mich App 55, 66; 263 NW2d 282 (1977), that *Dyke* "restricted this approach to malpractice cases". More on point, for purposes of the instant case, is the Michigan Supreme Court's ruling seven years after *Dyke* in *O'Brien v Hazlet & Erdal,* 410 Mich 1; 299 NW2d 336 (1980). That case involved suits by various plaintiffs against state licensed architects or contractors for injuries arising out of defective or unsafe improvements to buildings. Citing *Dyke,* the injured parties claimed that the six-year period of limitation violated due process because it barred a cause of action before the injured parties

---

[1] For an excellent review of the growing reliance upon state constitutions, rather than the federal constitution, as the primary guarantor of fundamental rights, see *Utter Freedom & Diversity In a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights,* 7 Puget Sound L Rev, p 491 (1984).

could reasonably know that a defect existed.[2] In a unanimous opinion, the six-year period of limitation was upheld. Since a review of relevant federal and state law discloses that neither the federal nor state constitution mandates that a "discovery" rule be utilized when applying a statutory period of limitation, we find Issue I to be without merit.

## II

Did the defendant bank fraudulently conceal from plaintiff supplier of lumber and materials the existence of a cause of action? If the existence of a cause of action is concealed by the party who would be liable, the person entitled to sue may bring the action within two years after the date of discovery or after the date the existence of the cause should have been discovered, despite any applicable statute of limitations. MCL 600.5855; MSA 27A.5855. That statute provides:

"If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations."

As a general rule, for fraudulent concealment to postpone the running of the period of limitation, the fraud must be manifested by an affirmative act or misrepresentation. *Draws v Levin,* 332 Mich 447, 452; 52 NW2d 180 (1952); *Dowse v Gaynor,*

---

[2] See *O'Brien, supra,* p 15, fn 15.

155 Mich 38; 118 NW 615 (1908); *Grebner v Runyon,* 132 Mich App 327; 347 NW2d 741 (1984); *Buszek v Harper Hospital,* 116 Mich App 650; 323 NW2d 330 (1982). An exception to this rule is that there is an affirmative duty to disclose where the parties are in a fiduciary relationship. *Barrett v Breault,* 275 Mich 482; 267 NW 544 (1936); *Tompkins v Hollister,* 60 Mich 470; 27 NW 651 (1886). See, also, *Stetson v French,* 321 Mass 195; 72 NE2d 410 (1947), cited with approval in *International Union United Automobile Workers of America, AFL v Wood,* 337 Mich 8; 59 NW2d 60 (1953).

However, there does not appear to be a fiduciary relationship between plaintiff and defendant bank. The record indicates that the only transactions between plaintiff and the bank were the two bank money orders. The bank issued these money orders payable to both Beaman and plaintiff, not so much to look out for plaintiff's interest, but rather to look out for the bank's own interest in preventing the attachment of a mechanics lien to property over which the bank held the mortgage. Therefore, we conclude that the fiduciary relationship exception to the affirmative act requirement of fraudulent concealment does not apply to the instant case.

Plaintiff cites *Groening v Opsata,* 323 Mich 73; 34 NW2d 560 (1948), for the proposition that there exists a duty to disclose when one party has superior knowledge. Plaintiff's reliance on *Groening* is misplaced. *Groening* involved a direct action based upon fraud in which the plaintiffs, purchasers of a parcel of land, made specific inquiries of one of the defendants, Mrs. Opsata, one of the owners of the property being sold. In answering those questions, Mrs. Opsata either misrepresented the facts or was silent to material facts. *Groening* differs from the

case at bar in that a distinction is drawn between what will establish a direct action for fraud and what constitutes fraudulent concealment for the purposes of tolling the running of a statutory period of limitation. *Dowse v Gaynor, supra,* pp 42-43; *Draws v Levin, supra,* pp 452-453; *McNaughton v Rockford State Bank,* 261 Mich 265, 268; 246 NW 84 (1933).

A second distinction between *Groening* and the case at bar is that in *Groening* the plaintiffs had made specific inquiries of Mrs. Opsata and the defendants were advised that the plaintiffs were relying on the "superior knowledge, experience as a builder, and information of" Mr. Opsata. *Groening, supra,* p 82. In the instant case, plaintiff never made any inquiries of the bank, and therefore did not rely upon the bank's superior knowledge. A third distinction is that in *Groening* there was a buyer-seller relationship between the parties, whereas in the instant case, the bank had no relationship at all with plaintiff. Furthermore, plaintiff fails to cite any authority for the proposition that a drawee bank has a duty to disclose to a payee that a negotiable instrument made payable to payee was paid over a forged endorsement.

## III

It is plaintiff's claim that it would have brought its action within the three-year period of limitation had the bank disclosed to plaintiff the existence of the forged instrument, that the bank was in a uniquely superior position to know that the instrument had been forged, that special knowledge is a factor favoring the application of the doctrine of estoppel, and that, accordingly, the bank should be estopped from asserting the defense of the statute of limitations. The question of

whether a bank which has no direct dealings with a payee of a bank money order issued by the bank pursuant to a mortgage loan agreement with the bank's customer should be estopped from asserting the defense that the statutory limitation period has run in an action by the payee based upon the bank's payment of the money order over the payee's forged endorsement has never been addressed in Michigan.

The criteria for application of the doctrine of estoppel are set forth in *Cook v Grand River Hydro Electric Power Co,* 131 Mich App 821, 828; 346 NW2d 881 (1984).

"An estoppel arises where: (1) a party by representation, admissions or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts * * *."

Special knowledge of a defendant may be a consideration in applying estoppel. *Bohlinger v DAIIE,* 120 Mich App 269; 327 NW2d 466 (1982). However, special knowledge is just one of many other factors enumerated by the *Bohlinger* Court, viz: concealment of a cause of action, misrepresentation as to the statutory time in which an action may be brought, inducement not to bring the action, a promise to pay or settle the claim, and a fiduciary relationship. None of these other factors are present in the instant case.

Also missing in the instant case is the element of false representation. In *Lothian v Detroit,* 414 Mich 160, 176-177; 324 NW2d 9 (1982), Chief Justice COLEMAN, writing for a unanimous Court which held that a party seeking to invoke the doctrine of estoppel must establish a false repre-

sentation or a concealment of a material fact, stated:

"The doctrine of equitable estoppel, a judicially fashioned exception to the general rule which provides that statutes of limitation run without interruption, see *Klass [v Detroit,* 129 Mich 35, 39; 88 NW 204 (1901)] 'is essentially a doctrine of waiver' which 'serves to extend the applicable statute of limitations—by precluding the defendant from raising the bar of the statute', *Huhtala v Travelers Ins Co,* 401 Mich 118, 132-133; 257 NW2d 640 (1977). Equitable estoppel may be introduced to counter a statute of limitations defense so as 'to accomplish the prevention of results contrary to good conscience and fair dealing', *McLearn v Hill,* 276 Mass 519, 524; 177 NE 617 (1931). Generally, to justify the application of estoppel, one must establish that there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of the representing or concealing party. See 28 Am Jur 2d, Estoppel and Waiver, § 35, p 640."

In the instant case, the bank made no representations to plaintiff. Nothing in the record suggests that the bank induced plaintiff to believe certain facts. Indeed, the bank had no dealings at all with plaintiff.

Except for silence, there is nothing in the record showing the bank concealed any material fact from plaintiff. While silence or inaction, *in certain situations,* may invoke the doctrine of estoppel, silence does not invoke the doctrine unless the party remaining silent has a duty or obligation to disclose.

"That concealment of material facts *that one under the circumstances is bound to disclose* may constitute actionable fraud is not open to question. *Busch v Wil-*

*cox,* 82 Mich 315; 46 NW 940 (1890); *Prudential Insurance Company of America v Ashe,* 266 Mich 667; 254 NW 243 (1934); *Wolfe v A E Kusterer & Co,* 269 Mich 424; 257 NW 729 (1934)." *Groening, supra,* p 83.

Unless there has been some fiduciary relationship or other direct dealings between the parties, mere silence is not enough to overcome the applicable period of limitation.

"Fraudulent concealment is more than mere silence. *McNaughton v Rockford State Bank,* 261 Mich 265, 268; 246 NW 84 (1933). See, also, *Schram v Burt,* 111 F2d 557 (CA 6, 1940). No fiduciary relationship existed between the Union and Wood, as was alleged and denied in *Dowse v Gaynor,* 155 Mich 38, 42; 118 NW 615 (1908). See, also, *Stetson v French,* 321 Mass 195; 72 NE2d 410; 173 ALR 569 (1947), and authorities annotated beginning on page 578." *International Union United Automobile Workers of America, AFL v Wood,* 337 Mich 8, 13-14; 59 NW2d 60 (1953).

Finally, we note that plaintiff cites *Nowicki v Podgorski,* 359 Mich 18, 32; 101 NW2d 371 (1960), for the proposition that silence should toll the statute of limitations in the instant case. However, that case involved direct dealings between the plaintiff, as purchaser, and defendants, as sellers of a grocery store. In *Nowicki,* defendant wife remained silent when her husband made false statements as to the volume of sales per week and as to the fact that the fixtures were in good shape. Obviously, there was a duty to speak up in that case.

IV

Lastly, plaintiff argues that an action for silent fraud is recognized in Michigan, *United States*

*Fidelity & Guaranty Co v Black,* 412 Mich 99; 313 NW2d 77 (1981), and that its complaint states a claim for silent fraud. In so doing, plaintiff concedes that for suppression of information to constitute silent fraud there must be a legal or equitable duty to disclose. The bank argues that plaintiff's complaint fails to state a claim for silent fraud, and even if it does, the bank owed no duty, either legal or equitable, to disclose the existence of the instruments to the plaintiff. We agree with the bank.

The complaint does not specifically plead a cause of action in fraud. Assuming, *arguendo,* that an action in fraud has been sufficiently pled, for the reasons set forth in Issues II and III of this opinion, we find that the bank had no duty to disclose to plaintiff the fact that the money orders had been paid over a forged endorsement. Consequently, plaintiff would not be able to prevail upon a silent fraud claim.

In addition to the duty to disclose, silent fraud requires a plaintiff to establish reliance. *Emerick v Saginaw Twp,* 104 Mich App 243, 247; 304 NW2d 536 (1981). Despite plaintiff's allegations to the contrary, we fail to see how plaintiff realistically relied on the bank's silence in the instant case. As was so aptly stated in the trial court's opinion:

"If, as alleged in this case, the plaintiff was not aware of the checks until four years after their issuance, there is no way that plaintiff could have relied upon the issuance of the check to its detriment in any way."

For these reasons, we affirm the trial court's dismissal of plaintiff's complaint against defendant bank with respect to silent fraud.

In conclusion, having found that none of the

issues raised by plaintiff establish error on the
part of the trial court, the trial court's order for
accelerated judgment in favor of the bank is af-
firmed. Costs to the bank.