27 F.3d 211
 63 USLW 2032, 18 Employee Benefits Cas. 1606
 Cathy POPE, administratrix of the estate of Arthur G. Pope,
Jr., Plaintiff-Appellant,
v.
CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS HEALTH AND
WELFARE FUND; Joint Board of Trustees, as administrator of
Central States Southeast and Southwest Areas Health and
Welfare Fund; Robert J. Baker; Arthur H. Bunte, Jr.; R.
Jerry Cook; Harold D. Leu; Howard McDougall; R.V.
Pulliam, Sr.; Robert C. Sansone; Marion M. Winstead, as
trustees of Southeast and Southwest Areas Health and Welfare
Fund, Defendants-Appellees.
 No. 92-6613.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 30, 1993.
Decided June 15, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 10, 1994.
 
 Leslie Patterson Vose, Charles E. Christian (argued and briefed), Landrum & Shouse, Lexington, KY, for plaintiff-appellant.
 J. Guthrie True, Stoll, Keenon & Park, Lexington, KY, Joan P. Simmons, James P. Condon (argued and briefed), Central States, Southeast & Southwest Areas Health & Welfare & Pension Funds, Rosemont, IL, for defendants-appellees.
 Before: KENNEDY, SILER, and BATCHELDER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff Cathy Pope appeals the district court's summary judgment on her claim for medical benefits under 29 U.S.C. Sec. 1132(a)(1)(B), of the Employee Retirement Income Security Act ("ERISA"). Pope argues that a welfare plan amendment reducing coverage for certain medical benefits enacted by Central States' Joint Board of Trustees ("the Joint Board") is reviewable under ERISA's fiduciary duty standards. Pope further argues that the Joint Board violated these standards. We affirm.
 
 Background
 
 2
 Arthur Pope was diagnosed with end-stage liver disease on March 7, 1987. He received a liver transplant, and was eventually provided coverage under Central States' welfare benefits plan. The plan suffered $64 million in losses during the 1987 calendar year. Thus, the Joint Board enacted a $50,000 lifetime coverage limit on benefits for liver transplants and other transplant procedures, effective January 1, 1989, as one means of ensuring the plan's solvency. On January 18, 1989, Arthur Pope received a second liver transplant. Central States refused to pay benefits exceeding the amended coverage limits. On June 20, 1989, Pope received a third liver transplant. Pope did not notify Central States of the transplant until after it occurred and did not administratively appeal Central States' failure to pay associated costs. On July 23, 1990, Pope filed this action alleging wrongful refusal to provide medical benefits. He died on October 2, 1990, and Cathy Pope, as administratrix of Arthur Pope's estate, was substituted as a party in this action.
 
 Analysis
 
 3
 Cathy Pope asserts that the district court erred in granting summary judgment on her ERISA claim, arguing that the Joint Board did not comply with ERISA's fiduciary requirements in enacting the January 1, 1989 amendment.[1] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In responding to a summary judgment motion, the non-moving party must set "forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). We review a district court's grant of summary judgment de novo. Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir.1993).
 
 
 4
 The January 1, 1989, plan amendment is not reviewable for compliance with ERISA's fiduciary requirements. In reaching this conclusion, we apply the rule developed in cases clarifying " 'that when an employer decides to ... amend ... a benefits plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards.' " Adams v. Avondale Indus., Inc., 905 F.2d 943, 947 (6th Cir.) (quoting Musto v. American General Corp., 861 F.2d 897 (6th Cir.1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989)), cert. denied, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); see 29 U.S.C. Sec. 1002(21)(a).[2] Therefore, we decline to follow the dictum in Musto stating that trustees who "amend[ ] a multi-employer plan, ... 'affect the allocation of a finite asset pool between participants,' ... and hence act as plan administrators subject to a fiduciary duty." Musto, 861 F.2d at 912.[3]
 
 
 5
 Pope argues that the Musto dictum should apply in place of the Adams rule because this case involves a multiemployer welfare benefits plan. However, even though Adams involved a single-employer plan, the concerns addressed in Adams are relevant here. Adams observed that, "[a]pparently, Congress chose not to impose vesting requirements on welfare benefit plans for fear that placing such a burden on employers would inhibit the establishment of such plans." Adams, 905 F.2d at 947. Thus, Adams sought to "avoid any rule that would have the effect of undermining Congress' considered decision that welfare benefit plans not be subject to a vesting requirement." Id. As in cases involving single-employer welfare-benefit plans, we "would, in effect, accord employees a vested right to health and welfare benefits," id., if, based on ERISA's fiduciary requirements, we were to adopt a rule restricting the amendment of multi-employer welfare benefit plans to situations where the amendment best serves the interests of plan participants and beneficiaries.[4]
 
 
 6
 Moreover, amendment of multi-employer plans does not differ from amendment of single-employer plans to the extent urged by Pope. A company "normally acts in its role as employer, not in its role as fiduciary" when amending a single-employer plan. Musto, 861 F.2d at 912. Imposition of fiduciary obligations in favor of plan participants and beneficiaries would thus divide the company's loyalties, a result ERISA was designed to prevent. See Mack Boring & Parts Co. v. Meeker Sharkey Moffitt, 930 F.2d 267, 275 n. 17 (3d Cir.1991). The trustees of a multi-employer plan do not act in the role of employers when enacting plan amendments which simply affect the allocation of an asset pool among participants and beneficiaries. See Musto, 861 F.2d at 912. However, multi-employer plan trustees assume a position analogous to that of a single-employer plan administrator when they amend a plan to protect its financial stability. Cf. Elser v. I.A.M. Nat'l Pension Fund, 684 F.2d 648, 656-58 (9th Cir.1982) (discussing a multi-employer pension-benefit plan), cert. denied, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). As in cases involving single-employer plans, the policy encouraging employers to establish welfare benefit plans, see Adams, 905 F.2d at 947, is served by permitting trustees of multi-employer plans to amend such plans without fiduciary considerations. Furthermore, and again like cases involving single-employer plans, imposition of fiduciary obligations in cases involving multi-employer plans would divide the trustees' loyalties and might keep them from pressing for generous welfare plan benefits.
 
 Conclusion
 
 7
 The district court correctly determined that the January 1, 1989, amendment is not reviewable for compliance with ERISA's fiduciary requirements. Moreover, Pope advances no other bases for reversal. Therefore, we AFFIRM the district court.
 
 
 
 [1]
 ERISA's fiduciary requirements appear at 29 U.S.C. Sec. 1104(a)(1). This section provides, in relevant part, as follows:
 [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan....
 
 
 [2]
 29 U.S.C. Sec. 1002(21)(A), which defines "fiduciary," provides as follows:
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 [3]
 The district court held that the January 1, 1989, plan amendment did not breach a fiduciary duty and was not arbitrary and capricious. We decline to consider whether the amendment was arbitrary and capricious in light of our alternative holding that the amendment is not reviewable for compliance with ERISA's fiduciary requirements
 
 
 [4]
 We note that Pope does not claim a deprivation of benefits that vested under ERISA. See 29 U.S.C. Sec. 1051; Adams, 905 F.2d at 947 (Welfare benefit plans "are explicitly exempted ... from the obligations of the ... vesting sections ... of [ERISA].")