**Paul GARD, in his capacity as a Trustee and Fiduciary of the Pattern & Model Makers Association of Warren & Vicinity Pension Fund (Defined Benefit), Plaintiff–Appellant,**

**v.**

**Karl BLANKENBURG; John Cruz; Charles Furlotte; Robert Kuschel; Joseph Laughhunn; Robert Joe Ledbetter; David Margolis; David**

---

McEachin; Robert Stephens; Jerome Wilson; Robert Udell, present or former Trustees of the Pattern & Model Makers Association of Warren & Vicinity Pension Fund (Defined Benefit); Mid–Continental Claim Service and Administrators, Incorporated; Laurence Berskin, Defendants–Appellees.

Nos. 00–1234, 00–2224.

United States Court of Appeals, Sixth Circuit.

Feb. 21, 2002.

---

Before GUY and CLAY, Circuit Judges; and NUGENT, District Judge.*

GUY, Circuit Judge.

Plaintiff, Paul Gard, a trustee of a multi-employer defined benefit pension plan (DB Plan), appeals several of the district court's determinations concerning his claims against the former trustees of the DB Plan for violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1101–14. Specifically, the district court found, after a bench trial, that the former trustees violated their fiduciary duty by adopting a 100% joint and survivor benefit option and a 90–hour break-in-service "cure" for inactive participants. On reconsideration, however, the district court held that the recent decision in *Lockheed Corp. v. Spink,* 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), dictated the finding that no fiduciary duty arose under ERISA for the defendants' conduct in amending the DB Plan.

Damages were later assessed and judgment entered in favor of plaintiff on one claim–that the former trustees violated their fiduciary duty by permitting the DB Plan to pay fees incurred by other plans. Defendants have not cross-appealed from that judgment. Plaintiff also appeals the district court's decision to deny him attorney fees under ERISA. After a review of the record and the arguments presented on appeal, we affirm.[1]

## I.

The Pattern & Model Makers Association of Warren & Vicinity Pension Fund (Defined Benefit) (DB Plan) is a multi-employer pension plan that has eight trustees; four designated by the union and four designated by the Michigan Model Manufacturers Association (MMMA).[2]

---

\* Honorable Donald C. Nugent, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Although the plan administrator, Mid–Continental Claim Service and Administrators, and counsel for the trustees, Laurence Breskin, are named in the caption, plaintiff does not appeal from the dismissal of the claims asserted against them.

2. The union merged with another local and the DB Plan has been renamed the International Association of Machinists and Aero-

The DB Plan was governed by the Revised and Restated Agreement and Declaration of Trust dated January 27, 1979, which provided that the trustees were empowered to amend the agreement "providing, however, that said amendment shall not change the right of the parties as they may be determined under any collective bargaining agreement in existence between the union and the employers."

During collective bargaining negotiations in 1983, the union and the MMMA agreed in principle to freeze the DB Plan and replace it with a defined contribution plan and a 401(k) plan. The matter was referred to a subcommittee to study the concerns and options, including the employers' desire to avoid withdrawal liability. Its recommendation, that they freeze the DB Plan and invest the assets in a dedicated bond portfolio, was approved by the union membership in December 1984.

The Supplemental Agreement reached between the union and the MMMA provided that employer contributions would cease being made to the DB Plan as of February 1, 1985, and would instead be made to a defined contribution plan to be administered by the trustees. Also, a 401(k) plan would be established by each employer. The Supplemental Agreement also provided that if it became necessary for the employers to resume contributions to the DB Plan, contributions to the new plan would be reduced by an equal amount. Plaintiff alleged that the trustees breached their fiduciary duties by failing to adhere to the limitations set forth in the Supplemental Agreement in adopting the amended DB Plan. *See* 29 U.S.C. § 1104(a)(1)(D). The district court, however, granted partial summary judgment to defendants on that claim on the grounds that the Supplemental Agreement was not a document or instrument governing the plan. Plaintiff has appealed from this finding.

The trustees retained Wyatt and Company and its actuary, Ralph Fecke, to evaluate what benefit packages could be supported by investing the assets of the DB Plan in a dedicated bond portfolio. His report to the trustees in March 1995 summarized the major benefits and his actuarial assumptions. Just before the amended plan was adopted on May 30, 1985, Fecke wrote to the trustees and stated that the DB Plan would be fully funded in perpetuity if the plan was amended in accordance with his earlier letter. The trustees either disregarded or failed to understand several of the actuarial assumptions in adopting amendments to the frozen DB Plan. The result was that the DB Plan became seriously underfunded.

The most significant deviations from Fecke's assumptions was the adoption of a 100% joint and survivor benefit when the prior plan had offered only a reduced benefit calculated at 80% of the unreduced benefit, plus or minus 1% for every year of difference in age between the participant and spouse. The evidence showed that the trustees misunderstood Fecke's assumptions and the joint survivor benefit being proposed in the amended DB Plan. The district court found that, "[i]n short, ... the trustees were 'out to lunch' on their individual and collective [fiduciary] duties."[3] When subsequent audits in 1987 indicated that the plan was substantially underfunded, the trustees adopted an amendment (recommended by counsel) that rescinded the unreduced joint benefit

---

space Workers, AFL–CIO, Local Lodge PM2828 Defined Benefit Pension Plan.

**3.** Nor was their error excused by the fact that Fecke called the discrepancy to the attention of counsel for the trustees, but did not speak up during the final meeting of the trustees.

but only for participants retiring on or after September 1, 1989. Unfortunately, this change made up only part of the deficit.

Fecke's calculations also assumed that there would be no change in participant status after February 1, 1985, and that those with a break in service before that date would be covered by prior rules pertaining to eligibility and benefit calculations. On July 23, 1995, however, the trustees approved a provision that allowed vested participants with a break in service before February 1, 1985, to qualify for the higher benefit rate under the amended plan if they worked 90 hours between September 1, 1984, and August 31, 1985. This break-in-service cure was not evaluated by Fecke, was enacted without adequate information or any investigation, and was prompted by non-specific concerns about potential litigation. As it turned out, some participants took a leave of absence from other employment in order to cure their prior break in service. A total of 33 participants took advantage of the cure and qualified for the enhanced benefit rate.

The complaint, filed in 1991 by a predecessor trustee, alleged breach of fiduciary duty and violation of ERISA by the trustees of the DB Plan, the attorneys who advised them, and the plan administrator.[4] Plaintiff and defendants filed motions for partial summary judgment, which were granted in part and denied in part. The only portion of those decisions appealed by plaintiff is the determination that the trustees did not breach their fiduciary

duties by failing to act in accordance with plan documents.

A bench trial was held on plaintiff's remaining fiduciary claims against the former trustees between May 29 and June 8, 1996. On October 21, 1996, the district court issued a lengthy written opinion setting forth its findings of fact and conclusions of law. The district court found the trustees had violated their fiduciary duties in three ways: (1) enacting a 100% joint and survivor benefit without understanding or clarifying the provision: (2) permitting former DB Plan participants to qualify for the enhanced benefits under the frozen plan by completing 90 hours of service: and (3) permitting the DB Plan to pay fees incurred by other employee welfare funds.[5]

The defendant trustees moved for reconsideration with respect to the first and second claims, arguing for the first time that they were not acting as fiduciaries in amending or modifying the DB Plan under *Lockheed.* The district court agreed and granted defendants' motion in an order entered September 30, 1997. Plaintiff's motion for reconsideration of that decision was denied a year later. Then, on January 21, 2000, the district court determined the amount of damages to be awarded with respect to the claim upon which plaintiff had prevailed. Judgment was entered accordingly. Plaintiff also moved for an award of attorney fees under 29 U.S.C. § 1132(g)(1). The magistrate judge recommended that the motion be denied. Despite plaintiff's objections, the district

---

4. The complaint was initially filed by Gary Corbin, who resigned as a trustee for reasons unrelated to the lawsuit. He was replaced several months later by Paul Gard, which resulted in the dismissal of the complaint for lack of jurisdiction. This court, sitting *en banc,* reversed the dismissal and remanded for further proceedings. *Corbin v. Blankenburg,* 39 F.3d 650 (6th Cir.1994).

5. The district court found no breach of fiduciary duty in the elimination of a rule that suspended benefits for participants age 65 or older, the payment of fees and expenses incurred by the DB Plan itself, or the purchase and retention of a dedicated bond portfolio as the investment vehicle for the fund's assets.

court agreed and denied the motion on September 29, 2000. Plaintiff's separate appeals from the judgment and from the denial of attorney fees were consolidated for decision by this court.

## II.

### A. Fiduciary Duty

 Plaintiff's first claim is that the district court erred in finding that it had incorrectly applied the fiduciary standard of care to the trustees' conduct in amending the DB Plan to include the 100% joint survivor benefit and the 90–hour cure. After reviewing this question of law *de novo*, we find that the trustees did not act as fiduciaries in adopting these provisions and, therefore, were not subject to ERISA's fiduciary duties in this regard.

As the Supreme Court's opinion in *Lockheed* makes clear, our starting point must be ERISA's definition of a fiduciary. ERISA provides, in relevant part, that "a person is a fiduciary with respect to a plan" to the extent that he "exercises any discretionary authority or discretionary control respecting management," or "has any discretionary authority or discretionary responsibility in the administration" of the plan. 29 U.S.C. § 1002(21)(A)(i) and (iii). Under this functional approach, the act of an employer or other plan sponsor in amending, modifying, or terminating a plan does not constitute an act of plan management or administration. *Lockheed*, 517 U.S. at 890. Consequently, employers or other plan sponsors "who alter the terms of a plan do not fall into the category of fiduciaries." *Id.*

Plaintiff argues first that *Lockheed* does not apply to the trustees' amendment of the DB Plan because it is a multi-employer plan. While the Supreme Court decisions in this area have all involved single-employer plans, we conclude that the Court's

analysis in those cases does not permit a distinction to be made between single-employer and multi-employer plans with respect to the applicability of ERISA's fiduciary obligations.

This issue arose first in the context of an employer's decision to adopt, modify, or terminate a welfare benefit plan. *See, e.g., Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 949 (6th Cir. 1990). The Court in *Lockheed*, however, extended the holding in *Curtiss–Wright* to pension benefit plans, emphasizing that the definition of a fiduciary makes no distinction between persons exercising authority over welfare benefit plans as opposed to pension benefit plans. *Lockheed*, 517 U.S. at 890–91.

In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), the Court again focused on the definition of a fiduciary and rejected an attempt to limit application of the holding in *Lockheed* to only those pension plans that are funded *solely* by the employer. Reversing the Ninth Circuit, the Court held that its conclusion in *Lockheed*

applie[d] with equal force to persons exercising authority over a contributory plan, a noncontributory plan, *or any other type of plan.* Our holding did not turn, as the Court of Appeals below thought, on the type of plan being amended for the simple reason that the plain language of the statute defining fiduciary makes no distinction. Rather, it turned on whether the employer's act of amending its plan constituted an exercise of fiduciary duty. In [*Lockheed v.*] *Spink*, we concluded it did not.

525 U.S. at 443–44 (citations omitted) (emphasis added). Likewise, the determination of whether the amendment of a pension plan was a fiduciary act should not

depend on whether the plan is a single- or multiple-employer plan.[6]

We also reject the related argument that *Lockheed* applies only when the employer, acting as a settlor of the plan, takes the action of amending or modifying the plan.[7] We recognize that the Court in *Hughes* explained its holding by stating that ERISA's fiduciary duties are not implicated when the employer, "acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Id.* at 444. As the Court explained in *Hughes:* "Although trust law may offer a 'starting point' for analysis in some situations, it must give way if it is inconsistent with 'the language of the statute, its structure, or its purposes.'" *Id.* at 447 (quoting *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)).

Given the functional nature of the definition of fiduciary, we believe that it is the nature of these actions–not the status of the actor as employer or settlor–that takes the conduct outside the defined functions of an ERISA fiduciary. Moreover, the Court's holding in *Lockheed* encompassed not only employers, but also "other plan sponsors" who alter the terms of a pension benefit plan. *See also Hughes,* 525 U.S. at 444–45. ERISA, in turn, specifically defines the term "plan sponsor" to include the trustees of a multi-employer plan. 29 U.S.C. § 1002(16)(B).[8] After considering the definitions of fiduciary and plan sponsor in light of the Supreme Court's holdings in *Curtiss–Wright, Lockheed,* and *Hughes,* we hold, as did the Third Circuit in *Walling v. Brady,* 125 F.3d 114 (3d Cir.1997), that trustees of a multi-employer pension benefit plan do not act as fiduciaries under ERISA when they amend, modify, or terminate the plan. *Accord Hartline v. Sheet Metal Workers' Nat'l Pension Fund,* 134 F.Supp.2d 1, 9–13 (D.D.C.2000).

## B. Trustees' Conduct

■ Taking a different tack, plaintiff argues that the trustees were acting as fidu-

---

6. Nor do we find persuasive plaintiff's reliance on language from this court's pre-*Lockheed* decision in *Pope v. Central States Southeast and Southwest Areas Health and Welfare Fund,* 27 F.3d 211, 213 (6th Cir.1994), to support the claim that the trustees acted as fiduciaries because the amendments "simply affect the allocation of an asset pool." In the first place, this court in *Pope* expressly declined to follow the dictum in *Musto v. American General Corp.,* 861 F.2d 897 (6th Cir. 1988), indicating that trustees who amend multi-employer plans affect the allocation of a finite asset pool and, therefore, act as plan administrators subject to fiduciary duties. Further, we observed in *Pope* that amendment of a multi-employer plan does not differ materially from amendment of a single-employer plan. *Pope,* 27 F.3d at 213. *See also Voyk v. Bhd. of Locomotive Eng'rs,* 198 F.3d 599 (6th Cir.1999) (employer amending multi-employer welfare benefit plan was not acting as fiduciary).

7. Plaintiff relies on trust law to define a settlor of a trust to be one who causes the trust to be created, or provides consideration for the trust. Because the DB Plan trustees were not responsible for formation of the plan and did not fund the plan, plaintiff contends they were not settlors and, therefore, must be fiduciaries.

8. The statute defines "plan sponsor" to mean "(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan." 29 U.S.C. § 1002(16)(B).

ciaries because "plan design" had been dictated by agreement between the union and the MMMA. As a result, plaintiff contends, the trustees' actions in amending the DB Plan were functionally no more than an exercise of discretionary authority in the management or administration of the plan. The functional definition of fiduciary does not include decisions concerning plan design; such as the form or structure of the plan, what benefits will be provided, who will be entitled to receive them, and how they will be calculated. *Hughes,* 525 U.S. at 444; *Lockheed,* 517 U.S. at 890. When the nature of the authority exercised by the trustees in this case is considered, it is clear that their decisions regarding the 100% joint and survivor benefit and the 90–hour cure were acts of plan design and, therefore, not actions giving rise to fiduciary obligations under ERISA.

The Trust Agreement empowered the trustees to amend the plan "providing, however, that said amendment shall not change the right of the parties as they may be determined under any collective bargaining agreement in existence between the union and the employers." As plaintiff emphasizes, the union and the MMMA negotiated the outline of the amendments to the DB Plan. Specifically, they agreed that the DB Plan would be frozen and the assets invested in a dedicated bond portfolio with the intention that the specific benefits under the plan would be determined based on what the investment could support. The union and MMMA did not have authority to amend the DB Plan and, as such, the Supplemental Agreement did not and could not actually amend the plan. Rather, it directed that the trustees vest the accrued interest of all active participants "with such benefit improvements as the actuary for the plan shall determine to be feasible by applying existing assets of the plan to purchase a dedicated bond portfolio."

The trustees were required to specifically determine what benefit improvements should be made within the framework approved by the union membership. The trustees received the report of the actuary and decided, albeit without proper understanding of the actuarial assumptions, to alter the terms of the DB Plan with respect to what benefits would be provided and who could become vested in the enhanced benefit rate. While the trustees' decisions were contrary to the intentions of the union and the MMMA, the trustees were not only empowered to but actually made the decisions about how to amend the plan. Since the trustees were not engaged in managerial or administrative functions, they were not acting as fiduciaries in amending the DB Plan.

■ Alternatively, plaintiff argues for the first time on appeal that even if the trustees were not acting as fiduciaries in amending the plan, they acted as fiduciaries when they implemented or carried out the challenged amendments. In support of this fiduciary claim, plaintiff relies on the decision in *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), and an academic discussion suggesting that standards need to be developed to distinguish between actions taken to amend plans and actions taken to implement those amendments, *see* Dana M. Muir, *The Plan Amendment Trilogy: Settling the Scope of the Settlor Doctrine,* 15 LAB. LAW. 205 (Fall 1999). We are satisfied that the facts of this case do not present a distinct challenge to the actions taken to implement the amended DB Plan.

In *Varity,* the Court held that the employer, which was also the plan administrator, exercised discretionary authority with respect to plan "management" or "administration" when it made misleading statements that led beneficiaries to withdraw

from the plan and accept a new employer and a new benefit plan. The Court explained that: "Conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, would seem to be an exercise of power 'appropriate' to carrying out an important plan purpose." 516 U.S. at 502. It is apparent from the Court's discussion that it is the nature of the challenged conduct that determines whether the actions trigger ERISA's fiduciary obligations. The fiduciary claim in *Varity* was based on the misrepresentations made in communications with plan beneficiaries.

Unlike the situation in *Varity*, the claims in this case do not rest on distinct conduct in the administration of the DB Plan. The crux of plaintiff's fiduciary claims was clearly the adoption of the 100% joint and survivor benefit and break-in-service provisions in the face of the intentions expressed in the Supplemental Agreement and without a proper understanding of those provisions or Fecke's actuarial assumptions.

## C. Failure to Adhere to Plan Document

■ Plaintiff appeals from the entry of partial summary judgment on the claim that the trustees violated their fiduciary obligations by failing to act "in accordance with the documents and instruments governing the plan" insofar as they are consistent with ERISA. 29 U.S.C. § 1104(a)(1)(D). Plaintiff specifically takes issue with the district court's conclusion that the Supplemental Agreement was not a plan document with which the trustees had a fiduciary duty to comply under ERISA. Reviewing the grant of summary judgment *de novo*, we find no error in this regard. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997).

Plaintiff does not deny that the DB Plan was established by the original Trust Agreement, which empowered the trustees to amend the plan (subject to veto by the union or the MMMA) as long as they did not change the rights of the parties under the collective bargaining agreement. The Trust also authorized the trustees "to establish a pension plan which shall set forth the benefits to be provided from the trust fund, the conditions of eligibility for such benefits, the terms of payment, and such other items as the trustees shall deem necessary to include, and to amend such pension plan, from time to time, in the discretion of the trustees." Trust, Art. II, section 3(A). The power to amend was not otherwise reserved to the union or the employers.

As the district court found, the Supplemental Agreement modified the collective bargaining agreement–not the Trust Agreement–and did not alter the terms of the trust instrument. Instead, it directed that the trustees amend the Trust Agreement to include the limitation that there be "no further accruals of credited service under the plan nor improvement in benefits without the agreement of the Union and the Employer." Although the limitation was added as Section 9.1 of the Restated DB Plan, it only constrained trustees and became part of the trust instrument after the plan was amended.

Plaintiff argues that ERISA plans can be governed by a collective bargaining agreement, *see, e.g., UMWA Health and Ret. Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), and that the trust instrument is not necessarily the only plan document, *see Rinard v. E. Co.*, 769 F.Supp. 1416 (S.D.Ohio 1991), *reversed on other grounds*, 978 F.2d 265 (6th Cir. 1992). Plaintiff has not established, however, that the Supplemental Agreement was a plan document that altered the

trustees' authority under the original Trust Agreement. The district court did not err in granting partial summary judgment to the trustees on the claim that they failed to discharge their duties in accordance with the documents and instruments governing the plan.

### D. Attorney Fees and Costs

■ In an ERISA action by a plan participant, beneficiary, or fiduciary, the trial court may award reasonable attorney fees and costs to either party. 29 U.S.C. § 1132(g)(1). This circuit has rejected a presumption that attorney fees should ordinarily be awarded to a prevailing plaintiff in such a case. *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1302–03 (6th Cir.1991)). We have identified the following five factors that are to be considered by the district court in exercising its discretion:

> (1) the degree of the opposing party's culpability or bad faith: (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec. of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985). These considerations represent a flexible approach, and no single factor is dispositive. *Foltice*, 98 F.3d at 937. We review the district court's denial of attorney fees for an abuse of discretion. *King*, 775 F.2d at 669. An abuse of discretion in this regard exists only when the court has a "definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Id.*

After entry of judgment, plaintiff moved for an award of attorney fees and costs totaling $1,134,560.46.[9] The motion was referred to a magistrate judge, who carefully analyzed the *King* factors and recommended that the motion be denied. Despite plaintiff's objections, the district court adopted the magistrate judge's report and recommendation and denied the motion. Plaintiff contends that the district court abused its discretion in the application and weight given to several of the *King* factors. After a review of the record, we find no abuse of discretion and affirm.

With respect to the first *King* factor, the degree of culpability or bad faith, plaintiff argues that the district court ignored the defendants' culpability and relied solely on an absence of bad faith. On the contrary, while the district judge did not discuss this factor at length, he agreed with the magistrate judge's conclusion that this factor favored the defendants. The magistrate judge reviewed the record and determined that, even considering the findings that were vacated on reconsideration, the defendants' actions that led to the lawsuit did "not exhibit the degree of blameable, culpable behavior" or "behavior otherwise approaching bad faith" that would support an award of attorney fees to plaintiff.

Plaintiff asks how it could be that the defendants, who were found to have engaged in a prohibited transaction constituting a *per se* violation of ERISA, are not found sufficiently culpable to have this factor weigh in favor of awarding attorney

---

9. The request was for attorney fees of $442.600.35, plus an enhancement by a 2.5 multiplier, and costs of $28,059.58.

fees. Simply speaking, the necessary degree of culpability is not established by the fact that a defendant has been found liable. Plaintiff was awarded damages in the amount of $466,978.28 (including prejudgment interest) on the claim that defendants breached their fiduciary duty and committed a prohibited transaction in allowing fees incurred by the defined contribution plan and the 401(k) plan to be paid by the DB Plan. Although the plan administrator was directed to allocate expenses between the plans, that instruction was not followed and the trustees failed to see that it was carried out. Expenses were not properly allocated until July 30, 1990, and only a portion of the expenses were subsequently reimbursed. The court found that "the trustees intended to have each plan pay its own expenses; however, good intentions do not insulate fiduciaries from liability." To find that the degree of defendants' culpability weighed in favor of awarding attorney fees in this case, would be tantamount to equating this factor with a plaintiff's status as a prevailing party; a conclusion that would be inconsistent with the law of this circuit. *See Foltice,* 98 F.3d at 936–37; *Armistead,* 944 F.2d at 1302–03.[10]

The district court found that the second factor, the ability to pay an award of attorney fees, weighed slightly in favor of plaintiff. In so concluding, the court was "mindful" that defendants were private individuals and not a typical "deep pocket." Plaintiff seems to suggest that this factor should weigh more heavily in his favor because there is reason to believe that the DB Plan or its insurers have paid the costs of defending this action. Whether that is true or not, there was no evidence present-

ed concerning the financial ability or inability to pay an award. The court did not abuse its discretion in considering this factor.

As for the third factor, the district court found that the plaintiff's victory on the merits was sufficient to deter other trustees in similar cases and an award of attorney fees would provide no significant extra deterrence. Urging that a fee award is necessary because defendants failed to take more care to prevent improper payments, which was a *per se* violation of ERISA, plaintiff emphasizes that there would have been no judgment without plaintiff's pursuit of this case. A fee award is not required for deterrence whenever a plaintiff incurs fees to establish an ERISA violation. *See id.* at 1303–04. Rather, as we observed in *Foltice,* "fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." 98 F.3d at 937. When there is little evidence of culpability or bad faith, however, there is no reason to seek deterrence beyond that which comes with holding fiduciaries liable for their breaches of fiduciary duty. *Armistead,* 944 F.2d at 1304.

There is no question that plaintiff maintained this action in his fiduciary capacity and sought a common benefit for the plan participants. The district court accordingly found that the fourth factor weighed in favor of an award of fees and costs to plaintiff. Plaintiff argues that the district court abused its discretion by not awarding fees on this basis alone, instead of causing him to rely on the common fund doctrine to recover his fees from the judgment. While the court may give this factor greater weight when plaintiffs might not bring suit except for the prospect of

---

**10.** Plaintiff does not challenge the conclusion that this factor weighed in favor of defendants with respect to fees incurred in connection with plaintiff's first appeal to the Sixth Cir-

cuit, defendants' petition for certiorari to the Supreme Court, and defendants' motion for reconsideration under *Lockheed.*

fee shifting, the record does not suggest it is the case here. *See id.* at 1304–05. Having found this factor favored plaintiff, the district court did not abuse its discretion in concluding that on the whole the factors did not warrant an award of attorney fees and costs in this case.

Finally, the district court concluded with respect to the relative merits of the parties' positions, that the trustees' position, although unsuccessful as to the one claim, was neither meritless nor mere harassment. As the magistrate judge explained.

> defendants certainly had a good faith basis for defending themselves before this Court on plaintiff's remaining counts, as well [as] defending its position before the Sixth Circuit. Defendants had every right to defend themselves vigorously and in good faith. There is nothing in the record to suggest that they stalled or otherwise prolonged this litigation unnecessarily. Defendants' position was certainly "no more devoid of merit than that of any other losing litigant." *Armistead,* 944 F.2d at 1304.

Plaintiff argues that this was error because defendants had no meritorious defense to having permitted the DB Plan to engage in prohibited transactions, but offers no authority to suggest that the district court's consideration of this factor should be limited only to the claim or claims upon which the plaintiff prevailed. The district court did not abuse its discretion in finding that this factor favored the denial of attorney fees and costs.

Taking the factors together, we are not left with a definite and firm conviction that the district court made a clear error of judgment in its conclusion after weighing the relevant factors.

**AFFIRMED.**