Jon WINTERHALTER,
et al., Appellants,

v.

WATSON WYATT & COMPANY,
Appellee.

No. 02–1795.

United States Court of Appeals,
Sixth Circuit.

Jan. 23, 2004.

Frederick K. Hoops, Richard J. Quist, Kitch, Drutchas, Wagner, DeNardis & Valitutti, Detroit, MI, for Plaintiffs–Appellants.

Thomas G. McNeill, K. Scott Hamilton, Scott A. MacGriff, Dickinson, Wright, PLLC, Detroit, MI, for Defendant–Appellee.

BEFORE: KEITH, MARTIN, and SUTTON, Circuit Judges.

KEITH, Circuit Judge.

This appeal concerns the timeliness of various claims alleging that Watson Wyatt & Company ("Wyatt") negligently performed actuarial services on behalf of pension funds of which Jon Winterhalter *et al.* (the "Appellants") were trustees. The Appellants appeal the district court's grant of summary judgment on behalf of Wyatt. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Appellants Jon Winterhalter. Karl Heim, Kevin Baugh, Lee N. Cole, Paul Wagner and Paul Guard are trustees of the International Association of Machinists and Aerospace Workers Local Lodge PM 2484 Defined Benefit Pension Fund ("DB Plan") and the Defined Contribution Benefit Pension Funds ("DC Plan") (collectively "the Plans"). The Appellants, who also include the Plans, filed this action in Oakland County, Michigan, alleging that Wyatt acted negligently during its tenure as actuary to the DB and DC Plans. Wyatt removed the action to federal court on the basis of diversity jurisdiction. This case is a companion case to *Corbin v. Blankenburg*, No. 91–72595. *aff'd.* 33 Fed. Appx. 722 (6th Cir.2002), which involves claims against the former trustees of the Plans.[1]

The Appellants allege six causes of action in their Amended Complaint: Count I. Malpractice; Count II, Negligence; Count III, Negligent Misrepresentation; Count IV, Breach of Fiduciary Duty; Count V, Breach of Contract; and Count VI, Breach of Warranty. Wyatt filed a motion for summary judgment, arguing that the statute of limitations had expired for the Appellants' claims. After submission of briefs, the district court entered an order granting Wyatt's motion and dismissing the amended complaint, except for the negligent misrepresentation claim asserted in Count III. Wyatt filed a renewed motion for summary judgment on that claim, and after submission of briefs, the district court, on May 17, 2002, granted Wyatt's motion and dismissed the remaining claim.

1. In *Blankenburg,* the district court found that "in short ... the trustees were 'out to lunch' on their individual and collective [fiduciary] duties." 33 Fed.Appx. at 725. It further stated that the trustees simply misunderstood or disregarded the actuarial advice that Wyatt gave them in 1985 regarding funding the Plan. Therein, the evidence specifically demonstrated that the trustees knew, or should have known, of the problems with amending the Benefit Plans at the time the amendment was adopted.

On June 14, 2002, the Appellants filed a timely Notice of Appeal.

The former trustees of the Plans retained Wyatt to perform actuarial services in connection with the creation of the DB Plan, created under ERISA. 29 U.S.C. § 1101. When amending the DB Plan, the trustees intended to include a 100% unreduced joint and survivor annuity. When it projected the cash flow needs of the DB Plan, however, Wyatt assumed the joint and survivor annuity would be 80%. According to the Appellants, "as a result of Wyatt's failure to analyze the costs associated therewith properly and/or to establish the proper amount to be paid into the [DB Plan], the [DB Plan] incurred substantial losses." J.A. at 192.

Appellants allege that Wyatt never disclosed the fact that it prepared assumptions based on an 80% annuity, and that because they are not actuaries, they were unaware that cash shortages in the DB Plan were the result of Wyatt's failures. According to the Amended Complaint, Wyatt's subsequent conduct exacerbated the problem. Specifically, the Appellants claim that Wyatt failed to do a second evaluation of the DB Plan for three years. Appellants further allege that Wyatt "misrepresented ... that [by] roll[ing] back the 100% joint and survivor benefit in the [DB Plan] to an 80%/20% benefit, any cash shortage in the [DB Plan] would be resolved." J.A. at 4. Wyatt counters that it informed the trustees on three different occasions prior to a May 30, 1985 special meeting that the actuarial analysis contained an analysis of a reduced 80% joint and survivor benefit, not the 100% benefit the Trustees ultimately adopted. Further, the Appellants allege that Wyatt failed to cost the 90–hour window benefit, failed to perform a valuation for over three years after dedicating the bond portfolio in the DB Plan, and continued to execute the Schedule B for the DB Plan's IRS Form 5500 without incorporating the cost of the benefit in the numbers, thereby misrepresenting the actuarial status of the DB Plan. Appellants terminated Wyatt in early January 1997.

## II. ANALYSIS

### A. Standard of Review

We review a district court's grant of summary judgment *de novo. Bowman v. Shawnee State Univ.,* 220 F.3d 456, 461 (6th Cir.2000). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "By its very term, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether an issue of fact is genuine and material, the court must believe the non-moving party's evidence and draw all justifiable inferences in the non-moving party's favor. *Id.* at 255

### B. The District Court Applied the Proper Statute of Limitations

Raising an issue of first impression under Michigan law, the trustees argue that the professional malpractice statute of limitations, rather than the general negligence statute of limitations, should apply to their claims.[2] Specifically, they argue

---

2. While the professional malpractice statute of limitations is shorter than the general negligence statute of limitations (two years versus three years), a claim does not accrue under the professional malpractice statute until the professional relationship is terminated. Be-

that there was "actuarial malpractice" associated with the filing of the Form 5500 from 1987, and by certifying that the DB Plan was fully funded, Wyatt violated its professional responsibilities.[3]

In support of their position, the Appellants assert the following arguments. First, they claim that the "actuary occupation would qualify it as either a governmentally licensed profession or as a pseudo-professional [under] the Michigan statutes." Second, the Appellants rely on *Adkins v. Annapolis Hospital, et al.*, 420 Mich. 87, 360 N.W.2d 150 (1984), for the proposition that the Michigan malpractice statute is flexible enough to include actuaries. For further support of the latter averment, Appellants cite the additional case of *Steiner Corporation, et al. v. Johnson & Higgins of California, et al.*, 135 F.3d 684 (10th Cir.1998) (discussing application of professional malpractice rules to actuaries under Utah law).

According to the Appellants, if their claims are construed under the proper statute of limitations (i.e., the Michigan Malpractice statute), then their "claims did not accrue until they learned the true nature of the plans and until Appellees' employees' depositions in September and October 1995." Br. of Appellants at 15.

■ Under Michigan law, to decide which limitation period controls, courts examine the type of conduct at issue and the interest harmed, not the label given to the claim. *Local 1064 RWDSU AFL–CIO v. Ernst & Young*, 449 Mich. 322, 332 n. 10,

535 N.W.2d 187 (1995). In the instant case, the district court properly held that the statute of limitations applicable to this suit,[4] the general negligence statute, is found at § 600.5805(9). Section 5805 governs injuries to persons or property and reads in pertinent part:

(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

\* \* \* \* \* \*

(9) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for the injury to a person or property.

MICH. COMP. LAWS § 5805(1), (9). The district court applied this three-year limitation to the case, and found that the claims against Wyatt were barred accordingly. For the purposes of this statute of limitations, a claim accrues when all the necessary elements have occurred and can be pleaded or when the cause of action is discovered.

The district court properly rejected application of the Michigan malpractice statute to actuaries. The only Michigan case cited by the Appellants. *Adkins*, limits its discussion on the malpractice statute to its applicability to health care professionals.

---

cause the trustees terminated Wyatt in approximately January 1997, the claims would likely have been timely if governed by the professional malpractice statute of limitations. We hold, however, that the general negligence statute of limitations applies, and, therefore, need not reach the issue of timeliness under the professional malpractice statute of limitations.

3. Appellants claim that, as a result of the federal requirement that a licensed actuarial opinion be included in the Schedule B, Wyatt's acts must be considered actuarial malpractice.

4. The district court correctly held that the six different causes of action alleged do not implicate six separate limitations provisions.

*Adkins,* 420 Mich. at 87, 360 N.W.2d 150 ("the Legislature clearly indicated that it believed certain enumerated licensed health care professionals ... were subject to the shortened period ... although the Supreme Court has indicated that this list of covered [health care] professionals is not exhaustive ... we believe that the list of included [health care] professionals reflects the Legislature's intent to expand the list of individuals who may be sued for malpractice ..."). Moreover, the Appellants have failed to assert any convincing argument as to why the reasoning in *Adkins* should be expanded to encompass professionals outside of the health care field. The other case cited by Appellants is equally unhelpful to their cause. Our task is to interpret Michigan law; *Steiner* is a case interpreting Utah law. *Steiner Corp., et al. v. Johnson & Higgins of California, et al.,* 135 F.3d 684 (10th Cir.1998).

Appellants' other argument—that the "actuary occupation would qualify it as either a governmentally licensed profession or as a pseudo-professional under the Michigan statutes"—does not negate the fact that actuaries are not members of "a state licensed profession" as required by § 600.5838(1). Appellants have failed to present any convincing argument as to why the term "state licensed" could mean anything other than its plain meaning, i.e., a professional licensed by the state of Michigan. Accepting the expansive reading of the term advocated by Appellants would render the term "state" to mean "government," and thereby include actuaries licensed by the French. Egyptian, or Australian governments within the meaning of the statute. There is no indication that the legislature intended such an attenuated result. Accordingly, the district court did not err in applying the statute of limitation found at § 600.5805(9).

### C. Fraudulent Concealment

Under § 600.5855, an exception to § 600.5827 is available where a defendant has concealed the facts giving rise to the cause of action:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred.

Mich. Comp. Laws § 600.5855.

For the Appellants to successfully advance the fraudulent concealment provision, and avoid the statute of limitations bar, they must show that Wyatt "wrongfully concealed the existence of the cause of action; that [Appellants] failed to discover the operative facts, within the limitations period, that are the basis for the cause of action; and that [the Appellants] exercised due diligence to discover those facts." *English v. Bousamra,* 9 F.Supp.2d 803, 810 (W.D.Mich.1998), *aff'd,* 188 F.3d 507 (6th Cir.1999) (finding that "the mere fact that plaintiff did not know who was [at fault, while knowing about the facts underlying the claim,] ... did not preclude him from bringing these claims.").

The critical question is "whether defendant's alleged conduct concealed from plaintiff the facts respecting the accrual or merits of the plaintiff's claim." *Id.* (quoting *Hill v. United States Dep't of Labor,* 65 F.3d 1331, 1337 (6th Cir.1995)).[5] It is

---

5. While there must be an affirmative act or

misrepresentation by the defendant, a fiducia-

not necessary that the plaintiff "know the details of the evidence by which to establish the cause of action;" he merely needs to know (or should have known) that a cause of action exists in his favor. *Id; see also Geo. Knight & Co. v. Watson Wyatt & Co.,* 170 F.3d 210, 212–15 (1st Cir.1999) (rejecting plaintiff's arguments that its claims were equitably tolled, where the plaintiff alleged that defendant negligently advised it to adopt amendments based on flawed actuarial assumptions and failed to account for the retroactive impact of the amendments, which resulted in an underfunded plan).

In the present case, a decision was made in 1984 to discontinue contributions to the DB Plan and establish the DC Plan. This action prompted the former trustees to retain Wyatt to perform actuarial services. Wyatt suggested the purchase of a dedicated bond portfolio, and Ralph Fecke, the actuary who worked with the trustees, provided the cash flow projections for the various investment assumption. Fecke consulted with the trustees and the attorneys for the plans as well as the investment institution where the assets were invested, which was First of America. Fecke's cash flow projections were used to purchase a dedicated bond portfolio to fund the DC plan. The portfolio was expected to match the expected cash flow of the fund, but it did not. As explained above, one of the reasons for the disparity was that Wyatt's analysis was based on a 80% joint and survivor benefit. The trus-

tees, however, wanted and adopted a 100% joint and survivor benefit. The parties dispute who knew what, and when it was known. According to Fecke, he did not know about the 100% benefit until the day before a special meeting was held concerning the plan. He further asserted that he notified the attorneys about the disparity, but did not tell the former trustees directly.[6] Appellees assert that it is unlikely that Fecke did not know about the 100% joint and survivor benefit before that time.

■ The district court properly found that there was no genuine issue as to whether the trustees should have known that an inconsistency existed between what they wanted the joint and survivor benefit to include and what benefit had been costed. In any event, by March 22, 1988, the trustees knew that the 100% joint and survivor benefit option caused the DB Plan to suffer financial problems. At that time, the trustees learned that the benefit had impacted the DB Plan financially, and amended the plan in response to the problem. On August 24, 1989, the trustees again heard that the plan was experiencing funding deficiencies. Finally, the 1989 actuarial valuation report presented to the trustees on July 24, 1990, shows that the DB Plan was still underfunded. The contention that Fecke led the trustees to believe that there were sufficient assets to fund the benefits included in the DB Plan does not obviate the fact that the trustees should have known about the existence of a cause of action no later than March 22,

---

ry relationship gives rise to an affirmative duty to disclose material facts. *Davis v. Keyes,* 859 F.Supp. 290, 293 (E.D.Mich.1994); *see also Lashlee v. Sumner,* 570 F.2d 107 (6th Cir.1978) (summary judgment is premature when there are material questions of fact regarding concealment by the defendant of the plaintiff's cause of action to toll the statute of limitations). Here, however, no fiduciary relationship existed.

6. The attorneys deny that they knew about the issue despite a March 25, 1985 letter sent to the board of trustees, wherein Fecke advises them that the "specific plan valued is summarized in the attached Table", along with a second letter dated May 27, 1985, advising the trustees that the DB plan would be funded in perpetuity—provided that it was the plan in the March 25, 1985 letter, which described the 80% benefit.

1988. Fecke's failure to admit that he knew about the 100% provision prior to the plan's adoption does not create the cause of action; the ability to identify the problem creates the cause of action, and that was present in 1988.

Appellants assert that there are numerous questions of fact regarding concealment of their cause of action—evidenced, they claim, by the fact that another actuary reviewed Wyatt's work papers and could not determine their negligent actions. And, even if on notice, Appellants say they took the prudent course of action by calling the special meeting on September 6, 1990. This line of reasoning is not persuasive. Even if the Appellants can simultaneously contend that they were not on notice, and that they took prudent steps if they were, they have failed to produce evidence to support concealment of the facts that gave rise to the cause of action. In the instant case, the operative facts were known by the Appellants, and in any event. Appellants have made no showing that they acted diligently to discover any facts unknown to them. *See Timmel v. Moss*, 803 F.2d 519, 521 (9th Cir.1986) (when the cause of action was belatedly discovered, the issue of whether the plaintiff exercised reasonable diligence is a question of fact.). Moreover, even if the Appellants could make a showing that the operative facts were concealed from them, the concealment must be of the "cause of action," not of the facts leading to the cause of action. No such showing has been made. Accordingly, the district court did not err by finding that the fraudulent concealment exception was not applicable to the facts of this case.

### D. Fiduciary Relationship

In the alternative, Appellants argue that, because a fiduciary relationship existed between the parties. Wyatt was under an affirmative duty to disclose material facts. *Lumber Village, Inc. v. Siegler*, 135 Mich.App. 685, 695, 355 N.W.2d 654 (1984). They assert, therefore, that Wyatt's failure to affirmatively disclose its wrongdoing, specifically its failure to include the 100% joint and survivor benefit in the cost projections, tolled the limitations period.

Whether a fiduciary relationship exists is a question of fact to be determined on a case-by-case basis. *Taylor v. Klahm*, 40 Mich.App. 255, 198 N.W.2d 715 (1972). Michigan law recognizes that fiduciary obligations may arise where trust and confidence are reposed in a party having superior knowledge. *Groening v. Opsata*, 323 Mich. 73, 82–83, 34 N.W.2d 560 (1948). The existence of a fiduciary relationship gives rise to an affirmative duty to disclose material facts. *Davis v. Keyes*, 859 F.Supp. 290, 293 (E.D.Mich.1994).

In the instant case, the district court correctly found that, even if Wyatt had been a fiduciary. Fecke's silence about the joint and survivor benefit mix-up does not place this claim within the statutory exception. The concealment must be of the fact that plaintiffs have a cause of action (as opposed to the facts underlying it):

> If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know, pursuant to the rule [requiring the exercise of ordinary diligence].
>
> It is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he had this knowledge, it is his own fault if he does not avail himself of those means which the law provides for preserving his claim.

*Katz v. First of America*, No. 87–264, 1989 WL 62196, at *4 (W.D.Mich. March 13,

1989) (quoting *Lemson v. General Motors*, 66 Mich.App. 94, 97, 238 N.W.2d 414 (1975)).

Even if Wyatt had a fiduciary relationship, and even if Wyatt's conduct defrauded them, the fraudulent concealment rule will not toll the statute of limitations if Appellants knew, or through the exercise of reasonable diligence, could have known of the facts giving rise to a cause of action. *Id.* The district court correctly found that Fecke's admission that no amount of investigation would have led them to further investigate the matter despite every effort to resolve the problems associated with the fund "simply does not satisfy their burden." J.A. at 34. While Wyatt had a "duty to explain its calculations and ensure that the client understood the meaning ... the trustees likewise had a duty to make sure they understood what benefits they were approving." *Id.* Moreover, the Appellants knew in "1990 that the unreduced joint and survivor benefit had not been costed," and that "the funding problems were due to the adoption of the 100% benefit." *Id.* The Appellants are, therefore, unable to utilize the fraudulent concealment exception.

### E. Equitable Estoppel

The doctrine of equitable estoppel, a judicially fashioned exception to the general rule which provides that statutes of limitations run without interruption, is essentially a doctrine of waiver which serves to extend the applicable statute of limitations—by precluding the defendant from raising the bar of the statute. *Huhtala v. Travelers Ins. Co.*, 401 Mich. 118, 132–33, 257 N.W.2d 640 (1977). If the exception did apply, the action could be brought within two years after a plaintiff discovers, or should have discovered, the existence of the cause of action. MICH. COMP. LAWS § 600.5855. Generally, to justify the application of estoppel, one must establish that

there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of the representing or concealing party. *Siegler*, 135 Mich.App. at 698, 355 N.W.2d 654. Here, the Appellants assert that Wyatt concealed material facts regarding the Plans.

■ Again, Appellants' argument fails. Fraudulent concealment only tolls the statute when a party affirmatively conceals the existence of a claim or cause of action. Here, Wyatt failed to present any evidence which could create an issue of fact concerning Wyatt's alleged affirmative concealment. The district court, therefore, properly held that the remaining claims were attempts to circumvent the applicable statute of limitations, and were barred by the applicable statute of limitations.

### F. The Two Putative Negligent Misrepresentation Claims

The conduct at issue in the putative negligent misrepresentation claims relates to Wyatt's actions after the trustees learned that the 100% joint and survivor benefit caused the DB Plan to incur serious cash shortage. The negligent misrepresentation claims are based on Wyatt's alleged misrepresentations that: (1) the DB Plan's "cash shortage would be reduced sufficiently to meet [its] Benefit obligations, if the Benefit was simply rolled back to the reduced benefit," and (2) Wyatt's "continued execution of Schedule B to IRS Form 5500 on behalf of [the DB Plan]." Again, the three-year limitation applies pursuant to §§ 600.5805(9), and 600.5827.

### 1. Schedule B

The district court correctly stated that the "plaintiffs' claim fails to identify ... what representation on the 1994 Schedule B is false." J.A. at 45. Moreover, the

"Form 5500 must be signed by the trustees and contains the admission that they have examined the report, 'including the accompanying schedules.'" *Geo. Knight & Co.*, 170 F.3d at 212–15. Further, there is no question that the trustees knew of the DB Plan's funding deficiencies long before the 1994 Schedule B was executed and, therefore, cannot claim that they were misled about the DB Plan's funding deficiencies by Wyatt's alleged misrepresentation of the financial status of the DB Plan in schedule B. If the trustees did not understand something, then they had a duty to seek clarification.

### 2. Reducing the Joint and Survivor Benefit

The question is whether the three-year statute of limitations bars Appellants' claim that Wyatt misrepresented that reducing the joint and survivor benefit would resolve the DB Plan's cash shortage problem. The court in *Gard v. Blankenburg* noted that, "[even] after the trustees adopted an amendment that . . . rescinded the unreduced joint benefit . . . [that] change made up only part of the deficit." 33 Fed.Appx. at 726–26. Nonetheless, the Appellants assert that, even though they were on notice of the cash shortage, they acted prudently.

The district court held that the "[trustees'] admission that they were on notice that there was a cash shortage in the DB Plan is not rendered immaterial by their belief that they acted prudently." J.A. at 42. Moreover, the "undisputed facts show not only that they were on notice of cash shortages in the DB Plan, but also that they were on notice that those losses did not abate after the joint & survivor benefit was reduced." *Id.*[7] We

agree with the district court's conclusion that there was "no genuine issue of material fact that Plaintiffs knew or should have known that the roll-back option did not cure the cash shortage before 1994 . . . notice of deficiencies came through many communications from Defendant after the 100% benefit was reduced." J.A. at 43. In fact, reliance on the special meeting called September 6, 1990, is misplaced; the minutes of this meeting show that the trustees knew about the cash shortfalls long before 1994. Accordingly, the second putative negligent misrepresentation claim, like the first, is barred by the three-year limitation period.

### G. Rule 38 Sanctions

Wyatt seeks sanctions against the Appellants pursuant to Rule 38 of the Federal Rules of Appellate Procedure, which provides:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

FED. R.APP. P. 38. As noted above, this appeal raises an issue of first impression under Michigan law. Moreover, although the argument of the Appellants was not ultimately persuasive, it is not a frivolous argument. The motion of Wyatt to seek Rule 38 sanctions is, therefore, denied.

### III. CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED.**

---

7. The valuations (from 1985 and 1987) that were presented to the trustees on March 22, 1988, revealed that the DB Plan had losses. The issue was discussed at the September 26, 1989 board meeting. Wyatt presented the 1989 actuarial report to the trustees on July 24, 1990, and again notified the trustees that the DB Plan was in trouble.